IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPHINE T. BELLUM & KAREN A. BISTREK, on behalf of themselves and others Similarly situated,<br>　　　　　　　　　Plaintiffs, | : : : : : | CIVIL ACTION<br>NO. 15-2460 |
| v. | : : | |
| THE LAW OFFICES OF FREDERIC I. WEINBERG & ASSOCIATES, P.C.,<br>　　　　　　　　　Defendant. | : : : : | |

**Jones, II      J.**                                                      **September 12, 2016**

**<u>MEMORANDUM</u>**

Presently before the Court is the unopposed Motion filed by Josephine T. Bellum and Karen A. Bistrek ("Plaintiffs") for Settlement, (Dkt No. 35), including a Memorandum of Law in Support thereof, (Dkt No. 35-1 [hereinafter Settlement Mot.]), and Plaintiffs' Motion for Attorneys' Fees and Expenses, (Dkt No. 36), and Memorandum of Law in Support thereof, (Dkt No. 36-1 [hereinafter Fees Mot.]), as modified by the Joint Notice of Agreement on Attorneys' Fees. (Dkt No. 40.) The Court heard oral argument on both Motions on July 21, 2015. For the following reasons, both Motions are GRANTED as outlined herein.

**I.     Background**

On May 4, 2015, Josephine T. Bellum and Karen A. Bistrek ("Plaintiffs") filed the initial complaint in this Court alleging that The Law Offices of Frederic I. Weinberg & Associates, P.C. ("Defendant") had violated provisions of the Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. § 1692 *et seq*. (Dkt No. 1 [hereinafter Compl.].) Defendant is a debt collector. (Compl. ¶ 30.) During the relevant period, Defendant was retained by Bank of America, N.A., successor-in-interest to FIA Card Services, to collect debts owed. (Compl. ¶ 28.) On January 5, 2015,

Defendant sent written communications to both Plaintiffs regarding debts allegedely owed by the Plaintiffs. (Compl. ¶¶ 22-28.)  Both January 5, 2015 communications stated;

> If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification of judgment to you. Upon your written request within the same thirty (30) day period mentioned above, we will provide you with the name and address of the original creditor, if different from the current creditor.
>
> ***
>
> The Law Offices of Frederic I. Weinberg & Associates, P.C. is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purposes.

(Compl. ¶¶ 29-30; Exs. A, B.) Both letters were created using a form template employed by Defendant to collect consumer debts in default on behalf of Bank of America, N.A. (Compl. ¶ 37.)

Plaintiffs allege that this letter violated 15 U.S.C. § 1692g(a)(4) "by failing to inform Plaintiffs that Defendant need only mail verification of the debt, or a copy of the judgment, if any, to them if Plaintiffs disputed the debt *in writing*." (Compl. ¶ 31.) The statute states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing…a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or a portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(a)(4).

On January 26, 2016, the parties jointly notified the Court that a class-wide settlement had been reached. (Dkt No. 25.) On March 9, 2016, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class, (Dkt No. 29), including the proposed Settlement Agreement. (Dkt No. 29-2, [hereinafter SA]), which the

2

Court granted on March 17, 2016. (Dkt No. 31), as modified by an Order dated March 28, 2016. (Dkt No. 32.) Pursuant to that Order as modified, members of the Settlement Class received Notice of the terms of the Settlement (the "Notice"). (Dkt No. 29-2 [hereinafter Notice].) No members of the Settlement Class filed objections. Four members of the class have requested exclusion.[1]

On June 10, 2016, Plaintiffs filed an Unopposed Motion for Final Settlement, (Dkt No. 35), and Memorandum of Law in support thereof. (Settlement Mot.) Defendant denies liability to Plaintiffs and the Class. (SA at 2 ¶ B(1).) While admitting no underlying liability, Defendant executed the Settlement Agreement after concluding that it is "desirable that the Litigation and the claims alleged therein be settled upon the terms and conditions set forth in this Agreement, in order to avoid further expense and burdensome, protracted litigation, and to put to rest all claims, known or unknown, that have been or might be asserted by Plaintiffs or the Class members against Defendant." (SA at 2 ¶ B(1).)

Similarly, while maintaining that their claims are meritorious and supported by evidence, Plaintiffs executed the Settlement Agreement because they "desire to settle their claims against Defendant, having taken into account, through their counsel, the risks, delay, and difficulties involved in establishing a right to recovery in excess of that offered by this settlement and the likelihood that the Litigation will be further protracted and expensive." (SA at 2 ¶ B(2).)

The Settlement Agreement has five main points. First, the parties agreed to certification of the following class for the purposes of settlement only:

> All persons with a Pennsylvania address to whom The Law Offices of Frederic I. Weinberg & Associates, P.C. mailed an initial debt collection communication that stated:

---

[1] The following members of the Class have requested to be excluded from the Class: Pauline J. McKelvey of Rochester, PA, Beth Kennedy of Rutledge, PA, Larry F. Haney of Harrisville, PA, and Tonya M. Saxe of Clarks Summit, PA. (Aff. Bailey Hughes, Case Manager, First Class, Inc., June 9, 2016 [hereinafter Mailing Aff.].)

3

> "If you notify this firm within thirty (30) days after your receipt of this letter, that the debt or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment, if any, and mail a copy of such verification or judgment to you," between May 4, 2014 and May 4, 2015, in connection with the collection of a consumer debt on behalf of Bank of America, N.A.

(SA at 3 ¶ F.) There are 889 members of the Class as so defined, including Plaintiffs.[2] The parties further agreed to the certification of the Plaintiffs as Class Representatives for the Settlement Class and the appointment of Greenwald Davidson Radbil PLLC as Class Counsel for the Settlement Class. (SA at 3 ¶¶ D, G.)

Second, Plaintiffs and every member of the Settlement Class agreed to release all claims against settling Defendant and dismiss such claims with prejudice. (SA at 4-6, 9 ¶¶ I, N.) Of note, this Release does not affect Defendant's rights to "attempt to collect any remaining debts owed by the Class members, nor will it prevent Plaintiffs and Class Members from asserting any defenses they have to the debts." (SA at 5 ¶ I(1), (4).)

Third, the parties agreed that Defendant will pay $1,000 in statutory damages to each of the named Plaintiffs and will create a common fund in the amount of $9,710.00 to be shared by the remaining class members. (SA at 3-4 ¶ H.) This represents an average recovery for each Class member, excepting the named Plaintiffs, of $10.92 per member. (SA at 4 ¶ H(2).) Any amount that remains undistributed to Class members after the deadline has expired for Class members to cash their settlement checks ("Void Date") shall be donated to Community Legal Services of Philadelphia as a *cy pres* recipient. (SA at 4 ¶ H(3).) The Void Date shall be 90 days from the date the checks are mailed to the class members. (SA at 4 ¶ H(4).)

---

[2] Defendant originally estimated that the Class included 971 Class members. (SA at 3 ¶ F.) Upon further investigation, Defendant determined that the relevant collection letter was only mailed to 893 unique persons. (Settlement Mot. at 2 n. 1.) Four persons have opted to exclude themselves, thus leaving the class with 889 participating class members. (Settlement Mot. at 2 n. 1.) These numbers all exclude the two named Plaintiffs.

4

Fourth, Defendant affirmed that it no longer uses the form initial debt collection letter received by Plaintiffs. (SA at 4 ¶ H(5).)

Fifth, the parties agreed to an amount of attorneys' fees and expenses in an amount up to and including $20,000. (SA at 6 ¶ J.)

**II.     Notice**

Notice to members of a putative class action pending settlement must be directed in a "reasonable manner to all class members who would be bound by the proposal, Fed. R. Civ. P. 23(e)(1)," and be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Class members must "have certain due process protections in order to be bound by a class settlement agreement." *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005) ("*Diet Drugs*").

In the Court's Preliminary Approval Order, the Court appointed First Class, Inc. as Claims Administrator. (Dkt No. 31.) The Claims Administrator was instructed to directly mail all Class members copies of the Notice of Pendency of Class Action. (Dkt No. 31) The Notice contained information about the legal rights and options of Class Members to stay in the Settlement, to exclude themselves, to object, and to go to the Hearing on final approval of the Settlement. (Notice.) The Notice clarified that all recipients of the Notice would automatically receive their share of the Settlement if they did not opt out or object. (Notice.)

In this case, the names and addresses of Class members was known to Defendant. When every Class member is known to the parties, the parties are required to send individual notice to each class member. *See* Fed. R. Civ. P. 23(c)(2); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort.).

5

The Claims Administrator mailed notice to 893 Class members with available addresses via, as its name implies, first class mail. (Mailing Aff. ¶ 7.) Forty nine notices were returned as undeliverable with no forwarding address. (Mailing Aff. ¶ 9.) This represents a penetration rate of roughly 95%.

Because all Class members were known to the parties, the individual notice regime met the requirements of Federal Rule of Civil Procedure 23.

### III.   Class Certification
#### a.  Legal Standard

The Court is permitted to certify a class for settlement purposes only so long as the Court finds that the Settlement Class satisfies the Federal Rule of Civil Procedure 23 requirements. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) ("*GMC*"). Plaintiffs must satisfy the four prerequisites of Federal Rule of Civil Procedure 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>>
>> (2) there are questions of law or fact common to the class;
>>
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>>
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If the prerequisites of Rule 23(a) are met, plaintiffs then must prove that "the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(b)(3), class certification "is permissible when the court 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.'" *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) ("*Hydrogen Peroxide*") (quoting Fed. R. Civ. P. 23(b)(3)). The two requirements of Rule 23(b)(3) are commonly referred to as "predominance" and "superiority." *Hydrogen Peroxide*, 552 F.3d at 310.

"The requirements set out in Rule 23 are not mere pleading rules." *Id.* at 311. A request for class certification "may be [granted] only if the court is "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (quoting *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (internal quotations omitted)). A court must "assess all of the relevant evidence admitted at the class certification stage." *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 779 (3d Cir. 2009) (quoting *Hydrogen Peroxide*, 552 F.3d at 317, 323) (internal quotations omitted)).

### b. Rule 23(a) Factors
#### i. Numerosity

The Court must find that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see generally In re Prudential Ins. Co. Amer. Sales Practices Litig.*, 148 F.3d 283, 309 (3d Cir. 1998) ("*Prudential*"). Although no minimum number is required to maintain a class action suit, the Third Circuit has held that "classes in excess of forty members" will generally satisfy the numerosity requirement. *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at *13 (E.D. Pa. 2015); *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

893 Class members have been identified and four have opted out, leaving 889 Class members. (Mailing Aff. ¶ 7.) The Court finds that the Settlement Class is sufficiently numerous.

### ii. Commonality

To find commonality, named Plaintiffs must "share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "A finding of commonality does not require that all class members share identical claims." *Prudential*, 148 F.3d at 310.

There are common issues of both fact and law. This case stems from a form notice letter. Plaintiffs and all Class members all received this notice letter; one's very membership in the Class is dependent upon having received the notice letter. In order to prevail on the claim, Plaintiffs will have to show that the letter's contents violated the FDCPA. The legal issue is the same for all Class members. The Court finds that the putative Class shares commonality. *See, e.g.*, *Weissman v. Philip C. Gutworth, P.A.*, 2015 WL 333465, at *2 (D.N.J. 2015) ("The commonality requirement is satisfied here because Plaintiff and all class members received debt collection letters from Defendants which included one of two specific statements. Questions of law regarding whether these statements violated the FDCPA are common to all."); *Harlan v. Transworld Sys., Inc.*, 302 F.R.D. 319, 328-30 (E.D. Pa. 2014) ("Rule 23(a)(2)'s commonality requirement is satisfied where, as here, the named plaintiff has claimed FDCPA violations based entirely upon the uniform, non-individualized content of defendants' standardized debt collection letters."); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2005) (finding common issues of fact and law where putative class received "a substantially identical form letter that plaintiffs claim violates the FDCPA.").

### iii. Typicality

"Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class." *Weiss v. York Hosp.*, 745 F.2d 786, 809 (3d Cir. 1984). "The heart of this requirement is that the plaintiff and each member of the represented group

have an interest in prevailing on similar legal claims." *Seidman v. Am. Mobile Sys., Inc.*, 157 F.R.D 354, 360 (E.D. Pa. 1994). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58; *see also In re Cmty Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).

Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all Class members allege that the form notice letter received by all Class members violated the FDCPA.

### iv. Adequacy of Representation

Adequacy of representation is met by a two-fold showing: "that (1) class counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 183 (E.D. Pa. 2014) (citing *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).

Both are met here. First, Class Counsel was appointed precisely because of their expertise and ability to represent the class in this matter. (*See* Dkt No. 36-2, Decl. Jesse Johnson, Associate, Greenwald Davidson Radbil PLLC, June 10, 2016 [hereinafter Johnson Decl.] ¶¶ 8-11.)

Second, no conflicts of interests have been identified between either Plaintiffs and the Class members, or Class Counsel and the Class members. Finally, Notice of the appointment of Class Counsel was sent to and received by 844 Class members. No Class member has filed an objection to Class Counsel.

### c. Rule 23(b)(3) Factors

The parties seek certification of the class under Rule 23(b)(3), which requires common questions of law or fact to predominate over individual questions, and that the class action structure is the superior method of litigating the claims.

#### i. Predominance

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). Plaintiffs allege that Defendant sent all Class members a form notice letter that violated the FDCPA. The factual and legal basis for the claims all depend on the language of a form notice that every Class member received. The Court finds predominance.

#### ii. Superiority

Under the superiority factor analysis, the Court considers "the class members' interest in individually controlling the prosecution or defense of separate actions...the desirability...or concentrating the litigations of the claims in the particular forum," whether there is already any litigation filed by class members, and any difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3). Class certification is the superior way to manage this case given the size of the Class. The alternative would produce individual suits, redundantly wasting judicial resources to litigate the same claims over and over.

### d. Conclusion

The Court grants Plaintiffs' Motion to certify the class for the purposes of Settlement.

## IV. Settlement

A federal class action may be settled only with the approval of a court. Fed. R. Civ. P. 23(e). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of

absent class members." *GMC*, 55 F.3d at 785 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) (internal quotations omitted)).

### a. The Court finds that the Settlement deserves an initial presumption of fairness.

The Court may apply an "initial presumption of fairness when the Court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Id.*; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"); *In re Cendant Corp. Litig.,* 264 F.3d 201, 232 n. 18 (3d Cir. 2001) ("*Cendant*"). First, the parties negotiated the Settlement at arm's length, with the expert assistance of the Honorable Lynne A. Sitarski, United States Magistrate Judge. (Gardner Decl. ¶¶ 60-62.) "[T]he participation of an independent mediator in settlement negotiations virtually insures [*sic*] that the negotiations were conducted at arm's length and without collusion between the parties." *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. 2010) (quoting *Bert v. AK Steel Corp.*, 2008 WL 4693747) (internal quotations omitted)).

Second, sufficient discovery had occurred for the resolution of this case. Aside from discovering the form notice letter , determining who received the letter, and assessing Defendant's net worth, no additional discovery is required. The form notice letter was known to Plaintiff since the outset of the litigation. During the course of initial discovery, Defendant identified 893 Class members and disclosed Defendant's net worth. Thus, no more factual discovery is required to resolve this case. Remaining developments would relate to legal determinations, not factual ones.

Third, as discussed in greater detail *supra* in the Court's analysis of the class certification requirement for adequacy of representation, Class Counsel attorneys are experienced with FDCPA actions. Armed with this expertise, and with the factual record fully developed, the parties were able to assess their respective positions and appreciate the pros and cons of settlement. Fourth, no member of the Class objected. The Court finds that an initial presumption of fairness applies to the Settlement.

### b. The Settlement is fair, adequate and reasonable under the *Girsh* factors and the *Prudential* considerations.

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir.1975). District courts must conduct independent analysis into the settlement to ensure its fairness. Final approval of a class action settlement requires the district court to determine whether "the settlement is fair, adequate, and reasonable." *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115,118 (3d Cir. 1990) (quoting *Walsh v. Great Atlantic & Pacific Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir. 1983) (internal quotations omitted)); *see also Cendant,* 264 F.3d at 231. Even where there is a presumption of fairness, the Third Circuit advises courts to consider the following factors (the "*Girsh* factors") in deciding whether to approve a settlement of a class action under Rule 23(e), including:

   (1) the complexity, expense and likely duration of the litigation;
   (2) the reaction of the class to the settlement;
   (3) the stage of the proceedings and the amount of the discovery completed;
   (4) the risks of establishing liability;
   (5) the risks of establishing damages;
   (6) the risks of maintaining the class action through trial;
   (7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The Circuit also advises the Court to address the following considerations (the "*Prudential* considerations"):

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323. District courts "must make findings as to each of the *Girsh* factors, and the *Prudential* factors where appropriate" in an "independent analysis of the settlement terms." *In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333, 350-51 (3d Cir. 2010). Finally, the Circuit advises district courts to conduct "a thorough analysis of settlement terms" to determine "the degree of direct benefit provided to the class," including whether "the number of individual awards compared to both the number of claims and the estimated number of class members, the size of the individual awards compared to claimants' estimated damages, and the claims process used to determine individual awards." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013).

      **i. The *Girsh* factors**

        **1. Complexity, expense and likely duration of litigation**

This factor is intended to capture "the probable costs, in both time and money, of continued litigation." *GMC*, 55 F.3d at 812 (internal citations omitted). Settlement was roughly one year after the case was first filed. As of this date, Class Counsel attorneys invested 94.1 hours of time to this case (Jesse Johnson, Esq. spent 85.4 hours, Michael L. Greenwald spent 3.1 hours, and James L. Davidson spent 5.6 hours). (Johnson Decl. ¶¶ 11, 83.) Class Counsel estimates an additional 20 to 25 hours. (Johnson Decl. ¶ 23.) As described in greater detail *infra*, under the Court's lodestar analysis, such work would total over $30,000 in attorneys' fees, exclusive of expenses. If this case were to continue, through motions for class certification, summary judgment, trial, and appeals, that number would grow many thousands greater. The projected length of the case arises from the complexity of the case. There is legitimate debate between the parties about the interpretation of the FDCPA and its application to this form notice letter. Early resolution via settlement saves all parties this time and expense, and provides Class members with recovery greater than would have been acquired under statutory restrictions. This factor weighs heavily in favor of approving the Settlement.

        **2. The reaction of the class to the settlement**

No member of the class has filed any objections to the Settlement. The fact that no one objected weighs heavily in favor of Settlement.

        **3. The stage of the proceedings and the amount of the discovery completed**

Under the third factor, the Court considers "the degree to which the litigation has developed prior to settlement." *In re Rent-Way*, 305 F.Supp.2d 491, 502 (W.D. Pa. 2003). The

Court determines "whether counsel had an adequate appreciation of the merits of the case before negotiating." *GMC*, 55 F.3d at 813. "This factor captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235.

As previously addressed, this case reached the Settlement following comprehensive factual discovery. The case settled following a Settlement Conference with Magistrate Judge Sitarski. In short, the Court finds that this case settled at a time in which Plaintiffs, and Class Counsel, had developed a significant appreciation for the merits of the case. They had fully briefed the main issues in the case and conducted merits-based expedited discovery. *Cf. Cendant*, 264 F.3d at 236 (affirming settlement where "Lead Counsel mainly engaged in only informal discovery"). Plaintiffs had accumulated sufficient information and understanding to negotiate the Settlement.

Moreover, when the settlement results from arm's length negotiations, the Court "affords considerable weight to the views of experienced counsel regarding the merits of the settlement." *McAlarnen v. Swift Transp. Co., Inc.*, 2010 WL 365823, at *8 (E.D. Pa. 2010); *see also In re General Instrument Sec. Litig.*, 209 F.Supp.2d 423, 430 (E.D. Pa. 2001) ("*General Instrument*") ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interests of the class."). This case settled after an arm's length negotiation mediated by Magistrate Judge Sitarski.

In conclusion, both in deference to Class Counsel's support of the Settlement, and upon the Court's independent review that Plaintiffs were in an appropriate stance to evaluate the

relative merits of the claims, the Court finds that this factor weighs in favor of approving the Settlement.

### 4. The risks of establishing liability and damages.

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. At the outset, the Court notes that there is a strong likelihood that Plaintiffs would have prevailed at trial. *See, e.g.*, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268 (11th Cir. 2016). However, even if the Class was successful at trial, they would have recovered *less* money than they recovered in this Settlement. The FDCPA allows for a higher recovery by the Class Representative than by Class members. Class Representatives can recover additional damages, not to exceed $1,000. 15 U.S.C. § 1692k(a)(2)(B). The recovery of $1,000 for each named Plaintiff represents the maximum statutory damages afforded. The class-wide recovery shall not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(b)(2). The Settlement Fund amount of $9,710.00 represents more than 1% of Defendant's net worth. (Settlement Mot. at 12.) Thus, the Settlement exceeds the maximum statutory damages that would have been available to the Class upon a successful result at trial. (Settlement Mot. at 11.) Therefore, this factor weighs in favor of approval.

### 5. The risks of maintaining the class action through trial.

With any class action, the Court may decertify or modify the class during the litigation should the class prove unmanageable. Fed. R. Civ. P. 23(c)(1). Even if the Court certified the class, there is always a risk that the class would be modified or decertified. However, there is nothing specific to the record to suggest that a putative certification of the Class would be

particularly vulnerable to decertification. As such, this factor weighs neither in favor nor against approving the Settlement.

### 6. The ability of the defendants to withstand a greater judgment.

The Court must consider whether the Defendants "could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. This factor is not alone dispositive. "[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This factor is inapplicable here due to the statutory cap on damages.

### 7. The range of reasonableness of the settlement fund in light of the best possible recovery and in light of the attendant risks of litigation.

The last two factors analyze "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing...compared with the amount of the proposed settlement." *Prudential*, 148 F.3d at 322 (quoting *GMC*, 55 F.3d at 806)). These factors ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The touchstone of this examination is the 'economic valuation of the proposed Settlement.'" *Erie County Retirees Ass'n*, 192 F.Supp.2d 369, 376 (W.D. Pa. 2002) (quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 92 (D.N.J. 2001)). However, there is no specific formula, threshold, or equation that a Court must use to determine whether a settlement amount is reasonable. Even a settlement

that is only a "fraction of the potential recovery" can be deemed appropriate. *In re Sunrise Sec. Litig.*, 131 F.R.D. 450, 457 n. 13 (E.D. Pa. 1990).

The proposed Settlement is reasonable considering it matches the maximum statutory damages available to named Plaintiffs and exceeds the maximum statutory damages available to Class members. (Settlement Mot. at 11.) In addition, the $1,000 recovery for named Plaintiffs and $10.92 recovery for each Class member is similar to other FDCPA form letter cases. *See, e.g.*, *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 150 (E.D. Pa. 2016) ($1,000 to each class representative and approximately $13.25 to each class member); *Gregory v. McCabe, Weisberg & Conway, P.C.*, 2014 WL 2615534, at *8 (D.N.J. 2014) ($1,500 to named plaintiff and roughly $1.00 to each class member); *Little-King v. Hayt Hayt & Landau*, 2013 WL 4874349, at *14-15 (D.N.J. 2013) ($1,000 to each class representative and $7.87 to each class member); *Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749, at *1 (D.N.J. 2007) ($2,500 to the class representative and $6.50 to each class member). This factor weighs in favor of approving the Settlement.

### ii. The *Prudential* considerations

None of the *Prudential* considerations weighs against Settlement: (1) following comprehensive factual discovery, and an arm's length mediation process, Plaintiffs and Class Counsel appropriately understood the merits of the case such that they could knowingly enter into the Settlement; (2) given that there were no objections by Class members, there are no claims by other classes or subclasses related to the underlying facts of this case; (3) only four persons opted out of the Class, representing only a small risk of additional lawsuits; (4) Class members were appropriately notified of their right to opt out, with only four (less than 1%)

opting to do so; (5) as discussed in greater detail *infra*, the demand for attorneys' fees is reasonable; and (6) the Plan of Allocation is fair and reasonable.

As to the sixth factor, "[t]he court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Walsh*, 726 F.2d at 964. Pursuant to the Notice, any Class Member who received the Notice will automatically receive payment. (Notice at 2-3) The Notice very clearly states that a Class member has to "do nothing" to receive the benefits. (Notice at 2.) The Court has identified a *cy pres* recipient. The Court finds that this procedure is fair and reasonable.

### iii. Conclusion

In sum, all of the *Girsh* and *Prudential* factors are either neutral or weigh in favor of the Settlement. Given that the Settlement came a year into a well-litigated case, after an arm's length negotiation process meditated by Magistrate Judge Sitarski, with no objections coming from the over 800 member Settlement Class, and with the Settlement Fund being above the maximum that would have been recoverable at trial, this Court approves the Settlement.

### V. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *GMC*, 55 F.3d at 820 n. 39 (citing *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)). This Court must conduct a "thorough judicial review" to determine whether and how much of an award counsel is due. *Prudential*, 148 F.3d at 333; *GMC*, 55 F.3d at 819. The determination rests with the discretion of the Court. *Id.* at 821. Further, counsel in a class action are entitled to reimbursement

of expenses that were "adequately documented and reasonable and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995). Plaintiff's Counsel requests an award of $24,500.00 inclusive of fees and expenses. (Dkt No. 40.) The FDCPA is a fee-shifting statute. *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991).

To calculate attorneys' fees in fee-shifting cases, courts generally apply "the lodestar method." *Blandina v. Midland Funding, LLC*, 2016 WL 3101270, at *7 (E.D. Pa. 2016). The Court finds it appropriate to apply the lodestar method here. *See id.*; *Alexander v. Coast Professional Inc.*, 2016 WL 861329, at *7 (E.D. Pa. 2016). The Court will compute the hours worked by all Class Counsel and multiply such amounts against the appropriate hourly rates.

Mr. Johnson spent 76.7 hours at an hourly rate of $350, totaling $26,845. (Johnson Decl. ¶¶ 19, 22.) Mr. Johnson also estimates that he will have to spend an additional 22.5 hours at his hourly rate, totaling $7,875. (Johnson Decl. ¶ 23.) Mr. Greenwald spent 3.1 hours and bills at an hourly rate of $400, totaling $1,240. (Johnson Decl. ¶¶ 19, 22.) Mr. Davidson spent 5.6 hours and bills at an hourly rate of $400, totaling $2,240. (Johnson Decl. ¶¶ 19, 22.) Thus, the total based on hours worked and attendant hourly billable rates is $38,200. (Johnson Decl. ¶ 24.)

Class counsel instead request $24,500, inclusive of fees and expenses. The Court finds this amount reasonable given the lodestar analysis.

BY THE COURT:

/s/ C. Darnell Jones, II

_____

C. Darnell Jones, II    J.